UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT HENSLEY,

    Plaintiff,

v.                                                    CASE NO. 3:14-cv-245-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth below, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings not inconsistent with this Order.

    **I.**    **Procedural History**

Plaintiff filed an application for Supplemental Security Income on May 4, 1990 alleging disability beginning on December 31, 1983. (Tr. 26-38.) Plaintiff's claim of disability was denied by an Administrative Law Judge ("ALJ") by decision dated September 24, 1991 (Tr. 110-15). On October 22, 1991, Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9.)

1

submitted a request for review of the ALJ's decision by the Appeals Council. (Tr. 116-17). Plaintiff's request for review was denied on April 23, 1992. (Tr. 118-19). Plaintiff filed a subsequent application for Supplemental Security Income dated July 28, 1993. (Tr. 229-41.) Plaintiff was ultimately found to be disabled based on this subsequent application. (Tr. 150.)

Pursuant to an Order issued by the United States District Court for the Western District of North Carolina in the case *Hyatt, et al. v. Shalala*, Plaintiff's May 4, 1990 application was reviewed by a second ALJ.[2] Because Plaintiff was granted Supplemental Security Income in connection with his subsequent application, review was limited to the period between May 4, 1990 and July 1, 1993. The ALJ conducted a brief hearing on March 15, 2012, at which Plaintiff was not represented by counsel. (Tr. 301-05.) Subsequent hearings were conducted on June 5, 2012 and July 12, 2012 at which Plaintiff was represented by counsel. (Tr. 308-26, 329-56.) On August 6, 2012, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act during the relevant period. (Tr. 13-24.) Plaintiff submitted a request for review by the Appeals Council, which was denied on January 10, 2014. (Tr. 6-8.) Accordingly, the ALJ's decision is the final decision of the Commissioner.

---

[2] To be eligible for relief under the Order issued in *Hyatt* based on an ALJ hearing or Appeals Council decision, the claimant must have lived in North Carolina at the time of the ALJ or Appeals Council decision, received a decision by an ALJ based on a hearing which occurred at a time when the claimant resided in North Carolina, or had the Appeals Council decision mailed initially to a North Carolina address. *See* POMS DI 32548.001.

## II.     Summary of the ALJ's Decision

In reaching his decision, the ALJ applied the five step sequential evaluation process provided by 20 C.F.R. § 416.920(a)(4).[3] (Tr. 13-24.)  At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity between May 4, 1990 and July 1, 1993.  (Tr. 15.)  At the second step, the ALJ found Plaintiff suffered from four severe impairments: a borderline intellectual quotient, an organic mental disorder, headaches, and status post gunshot wound.  (*Id.*)  However, at the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16-17.)  Accordingly, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found Plaintiff was able to perform:

> [L]ight work as defined in 20 CFR 416.967(b) except the claimant must avoid ladders or unprotected heights, he should avoid operation of heavy moving machinery, he needs low stress jobs with no production lines, he needs simple tasks, and should have limited contact with the public.  The claimant may occasionally bend, kneel, stoop, squat or crawl.

---

[3] The ALJ must follow a five step sequential evaluation process in determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).  First, if the claimant is performing substantial gainful activity, he is not disabled.  Second, if the claimant does not have any impairment or combination of impairments which significantly limit his ability to do basic work activities, he is not disabled.  Third, if the claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. Fourth, if the claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, he is disabled.  The plaintiff bears the burden of persuasion through step four, but the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

(Tr. 17-22.) At the fourth step, the ALJ found Plaintiff was not able to perform his past relevant work as a painter or construction worker. (Tr. 22.)

At the fifth step, the ALJ relied on the testimony of a vocational expert, and found Plaintiff was able to perform jobs which existed in the national economy between 1990 and 1993. (Tr. 22-23.) Specifically, the ALJ found Plaintiff was able to perform the duties of a laundry sorter (DOT # 361.687-014), a garment sorter (DOT # 222.687-014), a housekeeper (DOT # 323.687-014), a lens inserter (DOT # 713.687-026), and a table worker (DOT # 739.687-182).[4] (Tr. 23.) However, the vocational expert was not able to provide the number of positions available in these occupations during the relevant period. (Tr. 18-20.) Therefore, based on the change in population of the state of Florida between 1990 and 2012, the ALJ asked the vocational expert whether it was safe to assume that the number of positions available in these occupations between 1990 and 1993 was at least 50 percent of the number currently available. (Tr. 347.) The vocational expert indicated this was likely a safe assumption. (*Id.*) Based on this testimony, the ALJ found Plaintiff was able to perform jobs which existed in significant numbers in the national economy during the relevant period. (Tr. 23.) Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24.)

---

[4] References to "DOT" are short form citations to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

4

## II.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## III.    Discussion

Plaintiff appeals the administrative decision finding he was not disabled between May 4, 1990 and July 1, 1993. Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ erred in finding the occupations identified at the

5

administrative hearing existed in significant numbers during the relevant period. (Doc. 12 at 6-15.)  Second, Plaintiff argues the ALJ improperly ignored portions of the medical opinion of consultative examiner Dr. Boulos, which were adopted by medical advisor Dr. Carlos Kronberger at the administrative hearing.  (Doc. 14 at 15-20.)  For the reasons discussed herein, the Court finds merit in Plaintiff's claims.  The Court begins its discussion with Plaintiff's second claim.

### A.   Whether the ALJ erred in failing to address the medical opinions of Dr. Kronberger and Dr. Boulos

Plaintiff argues the ALJ erred in assigning significant weight to the testimony of Dr. Carlos Kronberger while failing to address all portions of his medical opinion.  (Doc. 12 at 15-20.)  Specifically, Plaintiff contends the ALJ failed to address the finding that Plaintiff experienced marked limitations in his ability to perform activities in a normal schedule, maintain regular attendance, and be punctual within customary tolerances.  (*Id.*)  Although Plaintiff attributes this finding to Dr. Kronberger, the record reflects the finding originated from a Mental Residual Functional Capacity ("MRFC") assessment prepared by state agency consultant Dr. Boulous on August 22, 1994.  Plaintiff asserts Dr. Kronberger adopted the findings contained in the MRFC assessment through his testimony at the administrative hearing.  However, the Commissioner responds it is unclear from Dr. Kronberger's testimony whether he actually adopted these findings.  (Doc. 13 at 8-10.)

6

An ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The weight to which a medical opinion is entitled depends on several factors. *See* 20 C.F.R. § 416.927(c). These factors include the length and nature of the medical source's examining relationship, consistency of the opinion with the record as a whole, the degree to which the opinion is supported by medical signs and laboratory findings, and the specialization of the medical source. *Id.* "Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts, the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision." *Monte v. Astrue*, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009). "Therefore, reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others." *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012).

In this case, state agency consultant Dr. Boulos completed a Mental Residual Functional Capacity assessment and a Psychiatric Review Technique form in connection with Plaintiff's application for disability benefits. (Tr. 265-68, 269-85.) The findings contained in the MRFC assessment indicated Plaintiff experienced marked limitations in (1) his ability to understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances; and (5) interact appropriately with the general public. (Tr. 265-66.) Based on these findings, Dr. Boulos opined Plaintiff did not have the ability to engage in substantial gainful activity due to his inability to sustain attention and concentration for extended periods of time. (Tr. 267.) With respect to the PRT form, Dr. Boulos found Plaintiff experienced moderate restrictions in his activities of daily living; moderate limitations in maintaining social functioning; frequent deficiencies in concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. 274.)

Plaintiff asserts the ALJ's decision failed to address the finding that Plaintiff experienced marked limitations in his ability to perform activities in a schedule, maintain regular attendance, and be punctual within customary tolerances. (Doc. 12 at 6-15.) Upon review, the Court agrees with Plaintiff's claim. In his decision, the ALJ noted the MRFC assessment completed by Dr. Buolos, and noted the marked limitations assessed therein. (Tr. 20.) However, the ALJ failed to explain

8

how these limitations were accounted for in the RFC assessment, or articulate his reasons for rejecting them.

Notably, Plaintiff's counsel examined the vocational expert with regard to the limitations assessed in the MRFC prepared by Dr. Boulos at the administrative hearing. (Tr. 350) Specifically, Plaintiff's counsel inquired:

> [I]f we add to the limitations that [the ALJ] gave you that the person is markedly limited in the ability to perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances and in the ability to maintain attention and concentration for extended periods. If they're markedly limited in those two work-related areas, what impact does that have?

(Tr. 350.) The vocational expert responded that such restrictions would preclude all work. (*Id.*) Based on this testimony, the ALJ's RFC assessment did not adequately account for the marked limitations assessed by Dr. Boulos; therefore, the ALJ was required to discuss his reasons for rejecting them. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) ("The Secretary . . . need not discuss all evidence presented to her. Rather, she must explain why significant probative evidence has been rejected.") (quotations and emphasis omitted). However, the Commissioner does not direct the Court to any discussion of the ALJ's reasons for rejecting Dr. Boulos's findings, and the Court is unable to discern such a discussion from its review of the decision.[5] Accordingly, the Court finds remand is necessary for further review of the medical opinion of Dr. Boulos.

---

[5] Rather, the Commissioner merely asserts it is unclear from the transcript of the administrative hearing whether Dr. Boulos's MRFC assessment was adopted by Dr. Kronberger. (Doc. 13 at 8-10.) However, it is unnecessary to speculate as to whether

### B. Whether the ALJ erred in finding the occupations identified at the hearing existed in significant numbers in the national economy during the relevant period

Plaintiff also argues the ALJ failed to provide substantial evidence in support of the finding that he was able to perform jobs which existed in significant numbers in the national economy during the relevant period. (Doc. 12 at 6-15.) Specifically, Plaintiff argues that while the ALJ identified specific occupational titles which were consistent with his RFC assessment, the ALJ failed to appropriately determine the number of such positions available during the period between 1990 and 1993. (*Id.*) The Commissioner responds by arguing the ALJ was not required to determine the precise number of jobs available to Plaintiff between 1990 and 1993, but was only required to demonstrate such positions existed in significant numbers. (Doc. 13 at 5-8.) The Commissioner further argues the ALJ satisfied this burden by identifying occupational titles which currently exist in numbers far beyond those previously recognized as being "significant," and which also existed during the relevant period. (*Id.*)

Once a claimant proves he cannot return to his past relevant work, the burden shifts to the Commissioner to show the claimant can perform other jobs which exist in significant numbers in the national economy. *Gibson v. Heckler,*

---

Dr. Kronberger adopted Dr. Boulos's assessment. Regardless of whether it was adopted, the assessment was itself a medical opinion which the ALJ was required to consider and weigh in rendering his decision. *See Baxter v. Barnhart*, 165 F. App'x 802, 805 (11th Cir. 2006) (noting an ALJ must state with particularity and with supporting reasons the weight given to medical opinions, and finding the ALJ appropriately rejected an MRFC assessment based on the justifications provided in his decision).

762 F.2d 1516, 1518–19 (11th Cir.1985). The burden is on the ALJ to provide evidence regarding the existence of other work in the national economy that a claimant can perform. *Reeves v. Heckler,* 734 F.2d 519, 525 (11th Cir. 1984). Generally, an ALJ may satisfy this burden through the testimony of a vocational expert. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). Additionally, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications," such as the "Dictionary of Occupational Titles, published by the Department of Labor." 20 C.F.R. § 416.966(d). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 416.966(a). The Eleventh Circuit has found an ALJ satisfied this burden by identifying as few as 1,600 positions in the claimant's home state, and 80,000 positions in the national economy which the claimant was able to perform. *Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir. 1987).

In this case, the ALJ relied on the testimony of a vocational expert in determining Plaintiff was able to perform the duties of jobs which existed in significant numbers in the national economy. (Tr. 18-30.) During examination of the vocational expert, the following exchange took place:

> ALJ: Are there any entry-level jobs the claimant could have performed in, I say, the period from 1990 through 1994, in terms of numbers? And if so, can you give us the title of the job, number of jobs in the region which I'll define as the state of Florida? If there's non-included light - - sedentary level jobs, if you would describe those as well.

11

> VE:  Just so I'm clear, you want me to give you numbers on availability of jobs based upon '90 to '94?
>
> ALJ:  As best you can.  I realize you don't have those in front of you, but [you're] experienced.  So I'll assume you can tell us what you believe within a certain percentage of [what] the job numbers would have been.
>
> VE:  Well, to be up front and quite frank - -
>
> ALJ:  Yes.
>
> VE:  - - yes, I do have experience in this field; but as far as the numbers, I could tell you that - - I could give you jobs that I know were in existence back then - -
>
> ALJ:  Okay.
>
> VE:  - - but as far as any numbers that I might give - - I'm kind of uncomfortable trying to project back almost 20 years ago - -
>
> ALJ:  I know.

(Tr. 344.)  The vocational expert then testified Plaintiff would be able to perform the duties of a laundry sorter, garment sorter, housekeeper, and lens inserter based on his age, education, employment history, and RFC.  (Tr. 355.)  The vocational expert further testified there were 402,000 positions available in these occupational titles at the time of the 2012 hearing, and 19,700 positions available locally.  (*Id.*)  Thereafter, the following exchange occurred:

> ALJ:  Okay.  Let's go back to the numbers.  [The] State of Florida has a current population of about 18 million, and I think we - - the state of Florida, according to the record I looked at had a population back in 1990 of approximately 12 million - -
>
> ATTY:  Your Honor, hold on.  Are you testifying here?

12

ALJ: No I'm asking. Is that your understanding of the state population?

VE: Well, my current population, yes, is around 18-19 million.

ALJ: Yeah. And what do you know what was the population was in the state of Florida back in 1990?

VE: (No verbal response)

ALJ: That's a yes or no. If you don't know, you don't know.

VE: I don't know.

ALJ: But if I were to - - based on your review of the history of the State of Florida, if were to just - - if we were to cut all these numbers in half, would that be an overstatement of what the reduction would be in terms of the number of jobs that would have been available back in, say, 1990, as an example, 22 years ago?

VE: I may be going 50 percent - - I mean, yes, based upon the population and demand. That would be a safe guesstimate.

ALJ: Okay. That's all I have.

VE: I mean, that's a guesstimate, and - -

ALJ: Okay. And if somebody - - and if Mr. - -

ATTY: Are you - - I mean, are we - - is this what we're doing now in these cases?

ALJ: And if Mr. Berger has some - -

ATTY: We're like - - I mean, guessing. That was a guess correct?

VE: Well, that's what I said. That would be a guesstimate. I mean, I don't have exact numbers.

ATTY: Have you done any studies of jobs back [then] and how many were available in 1990 to '93"

VE: As I stated, no.

13

     ATTY: Okay

     ALJ: Okay

(Tr. 346-48.)

Although an ALJ is generally entitled to rely on the testimony of a vocational expert at the fifth step of the sequential evaluation process, it is not clear that the testimony at issue in the instant case constituted substantial evidence. Indeed, the expert himself voiced reservations regarding his ability to accurately assess the number of jobs available to Plaintiff during the relevant period. (Tr. 344.) Therefore, it appears the ALJ relied upon testimony which exceeded the scope of the witness's expertise. *See generally Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("The witness was testifying as a vocational expert, not as a census taker or statistician."). The Court is cognizant of the fact that the Commissioner faced a difficult task in assessing Plaintiff's ability to work during a discrete period over twenty years ago. However, "[f]ederal courts should not too willingly indulge a watered down application of well-settled evidentiary reliability criteria for a discrete class of disfavored cases." *Guiton v. Colvin*, 546 F. App'x 137, 145 (4th Cir. 2013) (Davis, J., concurring). Here, the vocational expert was not able to provide any more than a rough "guesstimate" as to the relationship that the number of jobs available to plaintiff between 1990 and 1993 bore to the number of jobs available in 2012. The Court declines to find this testimony constituted substantial evidence. See *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("The ALJ must articulate specific

jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture.").

Accordingly, it is **ORDERED**:

1. The Clerk of Court is directed to enter judgment, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** with instructions to the ALJ to reconsider the opinion and findings of Dr. Bolous, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is further directed to close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b).  Plaintiff's attorney shall file such a petition within thirty (30) days from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees.  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE and ORDERED** in Jacksonville, Florida on March  2nd , 2015.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record